IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DANIEL MACARTHUR WILSON,       )
                               )
              Plaintiff,        )
                               )
v.                             )
                               )     CASE NO. 2:20-CV-348-RAH-CSC
                               )
                               )
JOHN CROW, et. al.,            )
                               )
              Defendants.

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.      INTRODUCTION

Daniel MacArthur Wilson, an indigent state inmate filed this 42 U.S.C. § 1983 action,

alleging that his Eighth Amendment rights were violated when he was placed in restrictive housing

at Easterling Correctional Facility because of the unsanitary and unsafe conditions including dirty,

backed-up toilets, contaminated water, and moldy surfaces.  He further alleges that because of his

placement in restrictive housing, he was denied access to prompt healthcare when he suffered

breathing problems and could not get a correctional officer's attention for over two hours.  (Doc.

1 at p. 1).  He also alleged that he has been wrongfully denied a classification review.  (Doc. 1-1).

He later filed an Amended Complaint alleging that (1) due to unsanitary conditions he slipped and

broke his arm on June 18, 2020, and did not receive medical care until June 24, 2020; (2) he was

placed in housing with inmates infected by the Corona virus; and (3) he was deprived of access to

the law library.   (Doc. 9).   He filed a Second Amended Complaint alleging that his Eighth

Amended rights were violated because while housed in the medical unit he was served Jello which

contained spider parts. (Doc. 16).  Finally, he filed a Third Amended Complaint realleging general

conditions claims and access to law library claims; he also alleged that the prison mail system was slow causing him to miss deadlines with the Court.  (Docs. 24 and 25).  The named Defendants in this action include Warden John Crow, and Correctional Officers, Lt. John Pryor and Captain Lawson, Classification Specialist, Mrs. Truss, and ADOC Stewards, Mrs. Youngblood, Mrs. Pickett, Mrs. Horsely, and Mr. Woods.  He seeks money damages, his freedom[1] and the closure of Easterling.[2] (Doc. 1 at p. 4).

The Defendants filed special reports (Docs. 46, 55, and 61), which included relevant evidentiary materials in support of these reports, including affidavits addressing the claims presented by Wilson, and medical and prison records.  In these documents, Defendants deny the claims against them.

After reviewing the special reports and exhibits, the court issued an order on March 10, 2021, requiring Wilson to file a response to the Defendants' special report, supported by affidavits or statements made under penalty of perjury and other evidentiary materials.  This order

---

[1]  The law is clear; a claim for release from custody may not be addressed in a 1983 action. Rather, this claim for relief may only be addressed in a petition for habeas corpus.  *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).  Indeed, in *Heck*, the Supreme Court held that claims challenging the legality of a prisoner's conviction or sentence are not cognizable in a 42 U.S.C. § 1983 action "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus" and complaints containing such claims must therefore be dismissed. *Heck* v. *Humphrey*, 512 U.S. 477, 489 (1994).  Thus, *Heck* confirms that "[h]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release."  521 U.S. 481, citing *Preiser*, 411 U.S. 475 (1973).  Therefore, summary judgment is due to be granted on Plaintiff's cursory claim for release from custody.

[2]  The record shows that Plaintiff has been released from custody and now resides at a free-world address. (Doc. 82).  Under Eleventh Circuit precedent "a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief."  *Smith v. Allen*, 502 F. 3d 1255, 1267 (11th Cir. 2007), *abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011); see also, *Zatler v. Wainwright*, 802 F. 2d 397, 399 (11th Cir. 1986) (per curium.).  Accordingly, Plaintiff's claims for injunctive and or declaratory relief are due to be dismissed.

specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 62 at p. 3).

Wilson filed responses to this order. (Docs. 50, 51, 57, 64, 65). In his responses, he restates and reargues the claims he stated in his Complaints. He also attempts to bring new claims, which were not plead in his Complaint, as amended. For example, he claims that Defendants failed to treat a rash in his genital area. (Doc. 51 at p. 3). However, these claims are not properly before the court because claims may not be raised for the first time in a response to a motion for summary judgment. *San Francisco Residence Club, Inc. v. Baswell-Guthrie,* 897 F. Supp. 2d 1122, 1214 (N.D. Ala. September 13, 2012).

The Complaint, as amended, alleges claims as follows: Plaintiff's Eighth Amendment rights were violated when (1) he was placed in restrictive housing at Easterling and was subjected to unsanitary and unsafe conditions including dirty, backed-up toilets, contaminated water, moldy surfaces, and (2) he lacked access to prompt healthcare when he suffered breathing problems and could not get any correctional officer's attention for over two hours, (doc. 1 at p. 1); (3) due to unsanitary conditions, he slipped and broke his arm on June 18, 2020, and did not receive medical care until June 24, 2020, (doc. 9); (4) he was served Jello which contained spider parts while housed in the infirmary, (doc. 16); (5) he was placed in housing with inmates infected by the Corona virus, (doc. 9). He also alleged that (6) he was deprived of access to the law library, (doc. 9); (7) the prison mail system was slow causing him to miss deadlines with the Court, (docs. 24

and 25); and (8) he was denied a classification review.  (doc. 1-1).  Thus, these are the only claims properly before the Court for consideration at this time.

Pursuant to the directives of the order entered on March 10, 2021, the court now treats the Defendant's special report and supplements thereto as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the Defendants.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . [A dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and alerting the court to portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is similarly required to cite portions of the record showing the existence of a material factual dispute. *Id.* at 324. To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether a genuine dispute for trial exists, the court must view all the evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmoving

party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(a).

To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Wilson's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Wilson has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the Defendants.

## III.  DISCUSSION

### A.  FACTS

Plaintiff claims that during his incarceration at Easterling Correctional Facility he was subjected to unconstitutional conditions in restrictive housing including dirty, backed-up toilets, moldy surfaces, contaminated water, and his lack of access to prompt healthcare when he suffered from breathing problems and could not get assistance from a correctional officer for over two

hours.  (Doc. 1 at p. 1).  He also claims his Eighth Amendment rights were violated when he was placed in housing with inmates infected by COVID-19 and while housed in the medical unit he was served Jello which contained spider parts.  (Doc. 16).  He also claims that the Defendants were deliberately indifferent to his medical needs because after slipping and breaking his arm on June 18, 2020, he was not seen by medical personnel until June 24, 2020.  (Doc. 9). Additionally, he claims he was deprived of access to the law library, (doc. 9), and a slow prison mail system made his filings with the Court late. (Docs. 24 and 25). Finally, he claims that he was denied a classification review.  (Doc. 1-1).

## B.  OFFICIAL CAPACITY

To the extent Plaintiff lodges claims against the Defendants in their official capacities and seeks monetary damages, these Defendants are entitled to absolute immunity.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied.  *Id.* Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted).  Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996). Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in

any court of law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit. *Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir.1990)).

In light of the foregoing, all Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity). Accordingly, all claims against Defendants in their official capacities for monetary damages are due to be dismissed.

## C.  UNCONSTITUTIONAL CONDITIONS

The law is clear; only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to establish constitutional violations. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain. *Id*. at 346.  Specifically, it is concerned with "deprivations of essential food, medical care, or sanitation" and "other conditions intolerable for prison confinement." *Id*. at 348 (citation omitted).  Prison conditions which may be "restrictive and even harsh, are part of the penalty that criminal offenders pay for their offenses against society" and, therefore, do not necessarily constitute cruel and unusual punishment within the

meaning of the Eighth Amendment. *Id.* Conditions, however, may not be "barbarous" nor may they contravene society's "evolving standards of decency." *Id.* at 345–46. Although "[t]he Constitution 'does not mandate comfortable prisons' . . . neither does it permit inhumane ones[.]" *Farmer*, 511 U.S. at 832 (quoting *Rhodes*, 452 U.S. at 349). Thus, a prisoner's conditions of confinement are subject to constitutional scrutiny. *Helling v. McKinney*, 509 U.S. 25 (1993).

Further, a prison official has a duty under the Eighth Amendment to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)); *Helling*, 509 U.S. at 31–32. For liability to attach, the challenged prison condition must be "extreme" and must pose "an unreasonable risk of serious damage to [the inmate's] future health." *Chandler v. Crosby*, 379 F.3d 1278, 1289–90 (11th Cir. 2004). In order to violate the Eighth Amendment, the risk of harm from the condition must be "so grave that it violates contemporary standards of decency to expose *anyone* unwilling to such a risk." *Id.* (quotation marks and citation omitted) (emphasis in original). As with deliberate indifference claims, to demonstrate an Eighth Amendment violation regarding conditions of confinement, a prisoner must satisfy both an objective and a subjective inquiry. *Farmer*, 511 U.S. at 834.

Besides the objective component, the Plaintiff must satisfy a subjective prong by showing that the Defendant acted with deliberate indifference. *Chandler,* 379 F. 3d at 1289-90. This does not require that the prison official purposefully acted to cause harm, but it does involve something beyond mere negligence. *Id.* The Eleventh Circuit has recently clarified under the subjective prong, that a Plaintiff must demonstrate a Defendant "acted with more than gross negligence" to demonstrate deliberate indifference. *Wade v. McDade*, 67 F. 4th 1363, 1373 (11th Cir. 2023).

8

Indeed, the Defendant must know of and disregard an "excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 837.  In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference."  *Id; see also, Wade,* 67 F. 4th at 1374.

**1.   Covid-19 Contact Claim**

Plaintiff claims that the Defendants acted with deliberate indifference to his health and safety when they placed COVID-19 infected inmates in a dorm with him and other non-infected inmates.  (Doc. 9 at p. 2).  This claim was also raised by Plaintiff in *Wilson v. Crow,* 2:20-cv-353-WKW-CSC, filed May 28, 2020.  The Court will take judicial notice of the filings in that case which specifically address this claim raised by Plaintiff in the instant action.  *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).

Warden Jones testified that that the Defendants and others employed at Easterling followed the protocol developed by the Alabama Department of Corrections and Wexford Health to keep Wilson and all inmates safe from COVID-19. (*See, Wilson v. Crow,* 2:20-cv-353-WKW-CSC, filed May 28, 2020, at Doc. 77-1 at pp. 1-6).  Also, Ruth Naglich, Associate Commissioner for Health Services for the Alabama Department of Corrections testified that from the outset of the pandemic in March 2020, ADOC worked to create and implement a plan to respond to the COVID-19 pandemic, both system wide and at Easterling. (*See*, *Wilson v. Crow,* 2:20-cv-353-WKW-CSC, at Doc.79-1 at pp.1-16).  Further, ADOC focused its efforts on operational preparedness, education, increased cleaning and disinfection of facilities, screening, restriction of movement into facilities, and securing and distributing hygiene, cleaning, and medical supplies. (*Id.* at pp. 3-8).

In addition to specific movement restrictions, education, and staffing restrictions, ADOC created and implemented protocols for testing inmates suspected of being COVID-19 positive, and quarantining and medically isolating inmates directly exposed to or testing positive for COVID - 19. Decisions on whether to test an inmate rested with medical personnel based upon criteria developed by ADOC from CDC Guidance, and in coordination with the three (3) level quarantine protocol. (*Id.* at pp. 8-10).

Quarantine and testing occurred based on a three (3) tiered system. (*Id*. at pp. 10-13). Level one, also known as "watchful wait," requires inmates suspected of exposure to a COVID-19 positive person to be isolated from the general population and monitored for fever and other symptoms of COVID - 19. Level one does not require testing. (*Id.* at p.10). Level two requires an inmate who exhibits signs or symptoms of COVID-19 or has confirmed prolonged direct exposure to a person who has tested positive to be isolated and tested for COVID - 19. (*Id.* at pp. 11-12). Level three requires medical quarantine for any inmate who tests positive for COVID -19. (*Id.* at pp. 12-13). Additionally, Warden Jones confirms that at Easterling "inmates who tested positive were isolated and did not return to population until they were medically cleared." (Doc. 46-1 at pp. 1-2).

Importantly, there is no allegation that Wilson contracted COVID- 19 in the instant action. (Docs. 1, 9 at pp. 2, 16, 24 and 25). Nor was there any allegation made by Plaintiff of infection in *Wilson v. Crow,* 2:20-cv-353-WKW-CSC. (Docs. 13, 17 and 37). Further, no medical staff member reported that Wilson contracted COVID- 19. (*See,Wilson v. Crow,* 2:20-cv-353-WKW-CSC, at Docs. 31-1 at pp. 1-8; 31-2 at pp. 1-2; 31-3 at pp. 1-2). Neither has

any Correctional Defendant in the instant action reported that Wilson exhibited (or claimed to have) symptoms. (Docs.46-1 through 46-8; 55-1 through 55-5; 61-1 through 61-5). Accordingly, the Court concludes that Plaintiff has failed to adduce facts from which the Court could conclude that any Defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" to Plaintiff due to the alleged contact with any COVID-19 infected inmate. (*Id); see also, Wade*, 67 F. 4th at 1374. Thus, summary judgment is due to be granted on this claim.

**2.  Conditions in Restrictive Housing**

Plaintiff claims that the conditions in restrictive housing amount to cruel and unusual punishment. Specifically, he claims that there is mold everywhere; the toilets are constantly backed up and the water is contaminated causing him to itch. He further alleges that because of these unsanitary conditions, he slipped in the shower and broke his arm. He also alleges that while in restrictive housing he suffered breathing problems for which, in spite of his calls for help, he received no assistance and was not taken to the infirmary for two hours. The Defendants deny these allegations. Indeed, Warden Crow testified that security checks of restrictive housing are regularly completed and the shower areas are cleaned and sanitized daily. (Doc. 46-2 at p. 1). Defendant Correctional Captain Nathaniel Lawson confirms this testimony and adds that he received a phone call from Plaintiff's mother while he was housed in population about Plaintiff's health and in response Defendant Lawson had the medical staff assess him. (Doc. 46-2 at pp. 1-2).

Even assuming that the conditions of restrictive housing were as unsanitary as Plaintiff claims and as a result he slipped in the shower and suffered a broken arm and had breathing problems, this Eighth Amendment claims still fails. Indeed, Plaintiff does not claim that he has

suffered lasting injuries from these conditions. Moreover, he admits that he received medical treatment for his breathing problems and his broken arm. Further, there is no evidence in the record in the instant action or in *Wilson v. Crow,* 2:20-cv-353-WKW-CSC, filed May 28, 2020, where Plaintiff brought these same claims against the doctor and nurses who provided care to him, of any lasting injury to Plaintiff. The law is clear; for liability to attach, the challenged prison condition must be "extreme" and must pose "an unreasonable risk of serious damage to [the inmate's] future health." *Chandler,* 379 F.3d at 1289–90. Accordingly, the Court concludes summary judgment is due to be granted on these claims.

### 3. Unsanitary Food

Plaintiff claims that while he was housed in the infirmary at Easterling, he ate Jello with spiders in it. Each Defendant denied any knowledge of Plaintiff's claim about spiders in his Jello. (Docs. 46-1 through 46-8; 55-1 through 55-5; 61-1 through 61-5). Indeed, this claim could be dismissed on that basis alone. *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk of harm to the inmate). Moreover, the Court notes that Plaintiff's claim regarding an instance of ingesting spiders in his Jello, while unpleasant, does not, without more, demonstrate that his constitutional rights were violated. Indeed, the Constitution requires that prisoners be provided 'reasonably adequate food.'" *Hamm,* 774 F.2d at 1575 (citation and quotation marks omitted). A well-balanced meal of enough nutritional value to preserve health satisfies this requirement. *Id*. "The fact that food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *Id*. (citation and quotation marks omitted); *See also, Bennett v. Misner*, 2004 WL 2091473 *20 (D. Or. 2004) ("Neither isolated instances of food poisoning, temporary lapses in sanitary food service, nor service of meals contaminated with maggots are sufficiently serious to constitute an Eighth

Amendment violation.").  Accordingly, summary judgment is also due to be granted in favor of Defendants on Plaintiff's claim about ingesting contaminated food.

**4.   Access to the Law Library and Prison Mail**

Plaintiff claims that he has been deprived of access to the law library and that the prison mail system is slow causing him to miss deadlines with the Court.  The law directs that incarcerated persons are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."  *Bounds v. Smith*, 430 U.S. 817, 825 (1977).  In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified and limited the right to assistance recognized in *Bounds*.  Specifically, the Court held that "an inmate alleging a violation of *Bounds* must show actual injury" arising from the alleged inadequacies in the law library, legal assistance program or access provided by officials.  *Lewis*, 518 U.S. at 349.  In identifying the particular right protected by *Bounds*, the Court explained that "*Bounds* established no . . . right [to a law library or to legal assistance].  The right that *Bounds* acknowledged was the (already well-established) right of ***access to the courts***. . . .  [P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'"  *Id*. at 350-351 (emphasis in original) (citations omitted).  The Court further opined *Bounds* did not require "that the State . . . enable the prisoner to ***discover grievances***, and to ***litigate effectively*** once in court. . . .  To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not something] . . . the Constitution requires."  *Id*. at 354 (emphasis in original).

The Court similarly determined that the mere claim of a systemic defect, without a

showing of actual injury, did not present a claim sufficient to confer standing.   *Id*. at 349.

Moreover, *Lewis* emphasized that a *Bounds* violation is related to the lack of an inmate's capability

to present claims.   518 U.S. at 356.   "*Bounds* . . . guarantees no particular methodology but rather

the conferral of a capability — the capability of bringing contemplated challenges to sentences or

conditions of confinement before the courts. When any inmate . . . shows that an actionable claim

of this nature which he desired to bring has been lost or rejected, or that the presentation of such a

claim is currently being prevented, because this capability of filing suit has not been provided, he

demonstrates" the requisite actual injury.   *Lewis*, 518 U.S. at 356.   Finally, the Court discerned

that the injury requirement is satisfied only when an inmate has been denied "a reasonably

adequate opportunity to file nonfrivolous legal claims challenging [his] convictions or conditions

of confinement. . . .   [I]t is that capability, rather than the capability of turning pages in a law

library, that is the touchstone." *Id*. at 356-357.   "[T]he Constitution does not require that prisoners

. . . be able to conduct generalized research, but only that they be able to present their grievances

to the courts — a more limited capability that can be produced by a much more limited degree of

legal assistance."   *Id*. at 360.   The Court admonished that federal courts should allow prison

officials to determine the best method of ensuring that inmates are provided a reasonably adequate

opportunity to present their nonfrivolous claims of constitutional violations to the courts.   *Id*. at

356.   A federal district court must "scrupulously respect[] the limits on [its] role, by not . ..

thrust[ing] itself into prison administration and instead permitting [p]rison administrators [to]

exercis[e] wide discretion within the bounds of constitutional requirements."   *Id*. at 363 (internal

quotations and citation omitted).

   Even assuming the accuracy and truth of Plaintiff's allegations that he has been unable to

access the law library and the prison mail is slow causing him to miss court deadlines, he makes

no allegation that he has suffered any detriment from these alleged deprivations. Rather, the undisputed evidence demonstrates otherwise. Indeed, Plaintiff has filed and effectively litigated two recent actions in this court – the instant action, filed May 27, 2020, and *Wilson v. Crow,* 2:20-cv-353-WKW-CSC, filed May 28, 2020. The Court dockets show Plaintiff has filed numerous written motions and other documents in each case. Furthermore, the Court dockets in each case do not reflect untimely filings by Plaintiff for which he suffered adverse consequences. To the contrary, in each case Plaintiff has successfully filed multiple responses to Defendants' Special Reports and numerous other motions and documents. Accordingly, the Court concludes that summary judgment is due to be granted on these claims.

## D. DELIBERATE INDIFFERENCE TO MEDICAL NEEDS

The court will now turn its attention to the Plaintiff's claim that the Defendants, who are all correctional officers or ADOC employees, treated him with deliberate indifference by failing to respond for two hours to his calls from restrictive housing for medical assistance to treat his breathing problems and the Defendants' failure to get him treatment for his broken arm for a period of six days. In both instances, it is admitted and undisputed that Plaintiff ultimately received medical attention for these health issues. Again, the court takes judicial notice of *Wilson v. Crow,* 2:20-cv-353-WKW-CSC, filed May 28, 2020, *see* Doc. 31-1 at pp. 1-78 (Affidavit of Manuel Pouparinas M.D. and attached medical records of Plaintiff).

In order to establish "deliberate indifference to [a] serious medical need . . . , Plaintiff[] must show: (1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response

to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248,1255 (11th Cir. 1999) (holding that, for liability to attach, the official must know of and then disregard an excessive risk to the prisoner).  Regarding the objective component of a deliberate indifference claim, the plaintiff must first show "an objectively 'serious medical need[]' . . . and second, that the response made by [the defendants] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted).  To proceed on a claim challenging the constitutionality of medical care, "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, [or] poor exercise of medical judgment."  *Daniels v. Williams*, 474 U.S. 327, 330–33 (1986).  Furthermore, the mere fact that an inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution.  *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985).

Besides the objective component, the Plaintiff must satisfy a subjective prong by showing that the Defendant acted with deliberate indifference. *Chandler v. Crosby,* 379 F. 3d 1278, 1289-90 (11th Cir. 2004).  This does not require that the prison official purposefully acted to cause harm, but it does involve something beyond mere negligence.  *Id.*  The Eleventh Circuit has recently clarified under the subjective prong, that a Plaintiff must demonstrate a Defendant "acted with more than gross negligence" to demonstrate deliberate indifference.  *Wade v. McDade*, 67 F. 4th 1363, 1373 (11th Cir. 2023) (granting summary judgment for nurses and holding that their failure to ensure inmate received his daily doses of anti-convulsion medicine did not rise to the level of "more than gross negligence") *citing Goebert v. Lee Cnty.,* 510 F.3d 1312, 1330 (11th Cir. 2007)

("an official acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by delay.")(Quotation omitted).  Indeed, the Defendant must know of and disregard an "excessive risk to inmate health or safety."  *Farmer,* 511 U.S. at 837.  In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id; see also, Wade*, 67 F. 4th at 1374.

While the undisputed medical evidence demonstrates that Wilson was treated for his injuries and breathing and stomach condition, *Wilson v. Crow,* 2:20-cv-353-WKW-CSC,  filed May 28, 2020, *see* Doc. 31-1 at pp. 1-78 (Affidavit of Manuel Pouparinas M.D. and attached medical records of Plaintiff), the claims in the instant action involve the delay by Defendant Correctional Officers and Defendant ADOC employees in assuring Plaintiff received medical attention.  Indeed, Plaintiff alleges that the Correctional Defendants' two-hour delay in getting Plaintiff medical care for his breathing difficulties and their six-day delay in getting him treatment for his broken arm constitute deliberate indifference.

In determining whether a delay in medical treatment constitutes deliberate indifference, courts consider the seriousness of the medical need, whether delay worsened the medical condition, and the reason for the delay. *See Goebert,* 510 F.3d at 1327.  Additionally, when an inmate complains that a delay in medical treatment rises to the level of a constitutional violation, he "must place verifying medical evidence in the record" establishing the detrimental effect caused by the delay. *Surber v. Dixie Cty. Jail*, 206 F. App'x 931, 933 (11th Cir. 2006) (internal citation omitted).  The court concludes that Plaintiff's claims premised on delay of treatment fail because there is no medical evidence in the record which demonstrates that the alleged delay caused any

detrimental effect to Plaintiff.  *Surber,* 206 F. App'x at 933.   Moreover, Plaintiff fails to present evidence from which this Court could conclude that the Correctional Defendants named in this action "acted with more than gross negligence" in ensuring medical treatment was provided to Plaintiff.  *Wade,* 67 F. 4th at 1373 (11th Cir. 2023).   Accordingly, summary judgment is due to be granted as to all Defendants on Plaintiff's claims for deliberate indifference.

### E.  CLASSIFICATION REVIEW DENIAL

Plaintiff, a convicted inmate, claimed that he was at Easterling Correctional Facility for eight months before he received a classification review.  He claims he was seeking to have his custody level changed so he could be transferred from Easterling.  (Doc. 1-1). To the extent the Plaintiff can be heard to claim that his due process rights were violated because he was housed at Easterling for eight months without receiving a classification review, the Court concludes that Plaintiff fails to demonstrate that his placement at Easterling "present[ed] the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."  *Sandin v. Conner*, 515 U.S. 472, 486 (1995).

Moreover, the undisputed facts show that after Plaintiff arrived at Easterling on November 12, 2019, he submitted a request slip on February 13, 2020, to be seen by Defendant T-Keyliah Truss, Classification Specialist. (Doc. 46-4 at p. 1). She advised him he was scheduled for the open house on February 26, 2020, but he did not attend.  *Id.*  Plaintiff was scheduled for a semi-annual review in April of 2020, which was cancelled because of a pending disciplinary. *Id.* at p. 2. Ultimately, Plaintiff obtained a special review on July 23, 2020, and was approved for Min-In SL IV custody.  *Id.*  Plaintiff's appeal of the custody decision was denied.  *Id.*  Even assuming Plaintiff was due a classification review earlier than the one he actually received, the Court concludes that the plaintiff fails to demonstrate that his confinement during that time "exceed[ed] similar, but

totally discretionary, confinement in either duration or degree of restriction." *Sandin, id.* Accordingly, the Court concludes that summary judgment is due to be granted on Plaintiff's due process claim.

### F.  RESPONDEAT SUPERIOR

To the extent Plaintiff alleges that Defendant Warden Crow is liable to him in his supervisory position based on a theory of respondeat superior for the alleged actions or inactions of Defendant Correctional Officers, ADOC employees, and unnamed medical personnel, those claims fail. The law is well established; supervisory officials cannot be held liable in § 1983 actions under any theory of respondeat superior or vicarious liability.  *See, Belcher v. City of Foley,* 30 F.3d 1390, 1396-97 (11th Cir. 1994).

Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (A supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.).  "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."

*Iqbal*, 556 U.S. at 677, 129 S.Ct. 1949.  Thus, liability for the alleged unconstitutional conditions and delay in Plaintiff's medical treatment could attach to Defendant Warden Crow if he either "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions . . . and the alleged constitutional deprivation."  *Cottone*, 326 F.3d at 1360.

Indeed, a causal connection maybe established either when (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so" or when (2) "a supervisor's custom or policy. . . result[s] in deliberate indifference to constitutional rights" or when (3) "facts support an inference that the supervisor directed the subordinate to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  *Id.*  (Citations omitted).  Based upon the Defendants' undisputed affidavit testimony, and the Court's careful review of the Plaintiff's allegations, the court concludes that the Plaintiff's claims against Defendant Warden Crow fail because as stated above the Plaintiff has not demonstrated any Defendant acted with deliberate indifference toward him in ensuring he received medical treatment and that he was not subjected to unconstitutional conditions. Neither has Plaintiff alleged any facts demonstrating that Defendant Warden Crow was aware of any widespread abuse in access to medical services or conditions at Easterling, nor has he demonstrated that Defendant Warden Crow proffered a custom or policy resulting in deliberate indifference to his needs.  Also, he has failed to allege any fact demonstrating Defendant Warden Crow knew his subordinates acted unlawfully.  Accordingly, any claims against Defendant Warden Crow in his supervisory capacity also fail for the reasons stated above.

For the above stated reasons, it is the RECOMMENDATION of the Magistrate Judge that

1.      The Defendant's motions for summary judgment (Docs. 46, 55, and 61) be GRANTED.

2.      Judgment be GRANTED in favor of the Defendants.

3.      This case be DISMISSED with prejudice.

4.      Costs be taxed against the Plaintiff.

On or before **August  14, 2023**, the plaintiff may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which he objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The plaintiff is advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993)("When the magistrate provides such notice and a party still fails to object to the findings of fact and those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 31st day of July, 2023.

     /s/  Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE